UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| JED B. IVERSON, INDIVIDUALLY AND ON BEHALF OF ALL SIMILARLY SITUATED INDIVUALS,<br><br>Plaintiff,<br><br>v.<br><br>ADVANCED DISPOSAL SERVICES, INC., f/k/a ADS WASTE HOLDINGS, INC., and ADVANCED DISPOSAL SERVICES SOLID WASTE MIDWEST, LLC,<br><br>Defendants. | Case No. 3:18-CV-00867-BJD-JBT<br><br>First Amended Class Action Complaint<br><br>JURY TRIAL DEMANDED |

## I. INTRODUCTION

1. Unwanted "robocalls" are the #1 consumer complaint in America today.

2. The people complaining about harassing robocalls is increasing at an alarming rate. In 2014, 1,949,603 complaints were made to the Federal Trade Commission (FTC) and Federal Communications Commission (FCC), in 2015 this number increased to 2,636,477, and in 2016 it increased again to 3,857,627. In 2017, between January and August, the FTC alone received more than 3,500,000 robocall complaints.

3. Congress enacted the TCPA to prevent the real harm suffered by Plaintiff and the putative class. Congress found "automated or pre-recorded calls are a nuisance and an invasion of privacy, regardless of the type of call," and Congress therefore decided

that "banning" such calls made without consent was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Pub. L. No. 102-243, §§2(10-13) (Dec. 20, 1991), codified at 47 U.S.C. § 227; *see also Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012) ("The Act bans certain practices invasive of privacy").

4. Senator Hollings, the TCPA's sponsor, described these calls as "the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall." 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242, 1255-1256 (11th Cir. 2014). Despite the penalties put in place over 26 years ago, robocall abuse continues to skyrocket.

5. The abuse continues in part because robocalls are inexpensive to make. As was noted in a Senate hearing on the subject: "With such a cheap and scalable business model, bad actors can blast literally tens of millions of illegal robocalls over the course of a single day at less than 1 cent per minute." Stopping Fraudulent Robocall Scams: Can More Be Done? Hearing Before the Subcomm. on Consumer Prot., Prod. Safety, and Ins. of the S. Comm. on Commerce, Sci., and Transp., 113 Cong. 113-117 (2013) (statement of Lois Greisman, Assoc. Director, Division of Marketing Practices, Bureau of Consumer Protection, Federal Trade Commission).

6. Plaintiff, Jed B. Iverson, on behalf of himself and the proposed classes of similarly situated individuals described below, brings this action against Advanced Disposal Services, Inc. ("Defendant" or "Advanced Disposal") to recover damages and other relief available at law for the negligent, knowing and/or willful conduct of contacting Plaintiff and others on their cellular telephones using pre-recorded voice messages in violation of the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, et se. [hereinafter "TCPA"].

7. By effectuating these unauthorized pre-recorded voice message calls, Advanced Disposal caused actual harm, not only by subjecting consumers to the aggravation that necessarily accompanies spam calls and messages, but also because consumers frequently must pay their cell phone service providers for the receipt of such spam, and because such messages diminish cellular battery life, waste data storage capacity, and are an intrusion upon seclusion.

8. The TCPA specifically prohibits unsolicited, pre-recorded voice messages/calls to cellular telephones, Advanced Disposal made these unwanted calls in a manner that violates the right of privacy of the putative class members, and it continued to call them with unwanted pre-recorded voice messages even after any alleged consent to call had been revoked. On behalf of the class, Plaintiff seeks an injunction requiring Defendant to cease all unlawful pre-recorded voice messages/calls, plus an award of statutory damages to the class members, together with costs and reasonable attorney's fees.

## II. JURISDICTION AND VENUE

9. The Court has jurisdiction over this class action lawsuit under 28 U.S.C. § 1331 and 47 U.S.C. § 227. Venue in this District is proper because a substantial part of the acts and transactions giving rise to these claims occurred in this District, and because Advanced Disposal is headquartered in this District.

## III. INTERESTED PARTIES

10. Plaintiff, Jed B. Iverson (hereinafter, "Plaintiff" or "Mr. Iverson"), is a natural person, and a resident of the State of Minnesota, residing in Ramsey County, Minnesota.

11. Defendant Advanced Disposal Services, Inc., f/k/a ADS Waste Holdings, Inc., is a publically-traded corporation (ADSW) headquartered at 90 Fort Wade Road, Ponte Vedra, Florida. ADSW largely operates through its subsidiaries.

12. Defendant Advanced Disposal Services Solid Waste Midwest, LLC ("Solid Waste Midwest") is one such subsidiary.[1] It is registered in Wisconsin, but its principal office is also located at 90 Fort Wade Road, Ponte Vedra, Florida.

13. ADSW generates revenue primarily by providing waste collection, disposal and recycling services to residential, commercial, and industrial customers. ADSW and Solid Waste Midwest are collectively referred to below as "Advanced Disposal".

14. ADSW operates in interstate commerce and provides collection, transfer, disposal and recycling operations to more than 200,000 commercial customers and 2.8 million residential customers throughout Alabama, Florida, Georgia, Illinois, Indiana,

---

[1] According to ADSW's 2017 10K report, Solid Waste Midwest's sole member is Advanced Disposal Services Midwest, LLC, whose sole member is HWStar Holdings Corp., which is a wholly-owned subsidiary of ADSW.

Kentucky, Maryland, Michigan, Minnesota, Missouri, North Carolina, Pennsylvania, South Carolina, Tennessee, Virginia, Wisconsin, and the Bahamas.

15. In October 2015, ADSW contracted with Five9, Inc. to use its dialing software and services to make prerecorded calls. Since November 2015, Advanced Disposal has utilized Five9, Inc.'s dialing software and services to make debt collection and service calls to their (and their subsidiaries') customers.

16. The Five9, Inc. contract requires Advanced Disposal to refrain from calling persons who advise they do not wish to receive communications. The contract also states that if Advanced Disposal is "not familiar with laws regarding the use of automated telephonic equipment," then Advanced Disposal should "seek the advice of an attorney prior to" using Five9, Inc.'s software. The contract further provides links to government reference information about the TCPA.

## IV. TCPA PROHIBTS UNWANTED CALLS TO CELL PHONES USING PRE-RECORDED VOICES

17. The TCPA prohibits any unconsented, non-emergency phone calls to a cell phone using either an autodialer or an artificial or prerecorded voice. See 47 U.S.C. § 227(b)(1).

18. According to the Federal Communication Commission ("FCC"), which is the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless

customers are often charged for incoming calls whether they pay in advance or after the minutes are used. See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

19. The FCC specifically ruled that a consumer's prior express consent to receive future calls may be revoked, and that calls made after revocation violate the TCPA. *In re SoundBite Communications, Inc.*, 27 FCC Rcd. 15391 (2012).

## V. FACTUAL ALLEGATIONS SPECIFIC TO MR. IVERSON

20. In February 2008, Plaintiff bought a home located at 80 Upper Afton Terrace, St. Paul, Minnesota.

21. At some point prior to, and including December 2015, Plaintiff's residential garbage provider was Coolidge Trucking Systems.

22. In December 2015, Plaintiff moved out of the home.

23. In March 2016, Defendant Solid Waste Midwest acquired the customer name and contact information for Coolidge Trucking Systems' trash removal accounts.

24. In March 2016, Advanced Disposal opened an account in Plaintiff's name.

25. Plaintiff did not speak with or sign any agreement with Advanced Disposal to open an account in his name.

26. Plaintiff did not provide any personal information to Advanced Disposal when Advanced Disposal opened an account in his name.

27. Although Plaintiff did not set up an account with Advanced Disposal and did not personally use its service, in September 2017 Plaintiff paid invoice G50005258507

for alleged service to the property, to clear any potential liens against the home to enable him to sell it.

28. After Advanced Disposal received Plaintiff's payment, and despite having previously suspended service to 80 Upper Afton Terrace, St. Paul, Minnesota, Advanced Disposal restarted service to the property.

29. When Plaintiff paid invoice G50005258507, he did not ask to restart service at the property because no one had lived on the property since May 2017.

30. Thereafter, Advanced Disposal sent Plaintiff invoice G50005299226 to bill him for alleged services at the property that had not been requested.

31. On December 8, 2017, Plaintiff called Advanced Disposal to find out why it was billing him for alleged services he had not requested.

32. During the ensuing telephone conversation with Advanced Disposal on December 8, 2017, Plaintiff was informed Advanced Disposal had started service for the property in March 2016.

33. During this December 8, 2017, phone call, Plaintiff informed Advanced Disposal that he did not live in the home in March 2016, and that no one asked Advanced Disposal to later restart service to the home, because no one had been living at the property since May 2017.

34. Plaintiff ended the December 8, 2017, conversation by informing Advanced Disposal that he did not owe the alleged debt, and that he would not be paying it.

35. Thereafter, Defendant Advanced Disposal began to call Plaintiff's cellular telephone, a number ending in 3041, with an auto-dialer and pre-recorded voice calls in an effort to collect the disputed debt from Plaintiff.

36. Advanced Disposal did not obtain consent to call his cellular telephone from Plaintiff.

37. Prior to February 16, 2018, on two occasions, Advanced Disposal called Plaintiff regarding a putative debt, and Plaintiff told the caller the putative debt was not his, and to stop calling him. In one these calls, the caller told Plaintiff that despite his instruction to stop, the collection efforts would continue and the calls would not stop.

38. On February 16, 2018, as a result of receiving several time-consuming, distressing, and invasive debt-collection telephone calls from Advanced Disposal on his cellular telephone, Plaintiff called the number on Solid Waste Midwest's invoice, 651-487-8546, and asked for Advanced Disposal's fax number so Plaintiff could fax Advanced Disposal a letter.

39. During this February 16, 2018, telephone conversation, Advanced Disposal's agent gave Plaintiff the fax number 414-257-2323.

40. Feeling harassed by Advanced Disposal, on February 16, 2018, at 3:03 p.m., Plaintiff faxed a letter to 414-257-2323.

41. Plaintiff's February 16, 2018 fax letter provided his phone number ending in 3041, and states Advanced Disposal does not have permission to call him at that number or any number.

42. Advanced Disposal did not have consent to call Plaintiff's cellular telephone number ending in 3041 before February 16, 2018, but after that date, any consent Advanced Disposal may have thought it had to call Plaintiff's cellular telephone ending in 3041 had been revoked.

43. Despite the Five9, Inc. contract, and despite receiving Plaintiff's fax stating Advanced Disposal did not have permission to call him, Advanced Disposal continued to call Plaintiff's cellular telephone ending in 3041 with an auto-dialer and/or pre-recorded messages on February 23, 2018, February 28, 2018, March 2, 2018, March 8, 2018, March 13, 2018, March 23, 2018, March 28, 2018, March 29, 2018, March 30, 2018, April 24, 2018, and May 7, 2018.

44. For example, on February 23, 2018 and February 28, 2018, Advanced disposal called Plaintiff's cellular telephone ending in 3041 with the following pre-recorded voice message:

> "Hello, this is Advanced Disposal Services, there appears to be an issue with your Advanced Disposal account that needs your immediate attention. Your account has recently been placed on a service interruption. In order to resume your service, the total balance due on your account needs to be paid, some restrictions apply. Please respond to this matter by calling 866-496-5780, Monday, Wednesday, Friday, between the hours 8:00 am to 5:00 pm or Tuesday, Thursday, between 8:00 am to 7:30 pm. If you have already made a payment, please disregard this message. Thank you."

45. Plaintiff called Advanced Disposal again on May 11, 2018, and confirmed with Advance Disposal's agent that Advance Disposal's fax number was 414-257-2323.

46. Advanced Disposal's calls to Plaintiff's cellular telephone ending in 3041 were for the purposes of attempting to collect a debt.

47. On information and belief, all members of the putative class received artificial or pre-recorded voice messages from Advanced Disposal without consent and were called *en masse*.

48. Given Advanced Disposal's extensive use of artificial or prerecorded voice messages to attempt to contact consumers, there are likely thousands of putative class members as further described herein.

## VI. CLASS ACTION ALLEGATIONS

49. This action is brought on behalf of a class and two sub-classes.

(a) TCPA Class consists of: All persons in the United States who were called without consent with a pre-recorded voice message or artificial voice, regarding a purported debt owed to ADSW or any ADSW subsidiary or affiliate, on their cellular telephone during the four-year period prior to the filing the complaint in this action through the date of certification.

(b) The TCPA Class subclass consists of: All persons in the United States who were called (1) where the cellular number called was obtained by a third party, including but not limited to a skip trace service, or where the number was captured via caller ID; (2) they were called with a pre-recorded voice message or artificial voice, regarding a purported debt owed to ADSW or any ADSW subsidiary or affiliate; (3) the call was made during the four-year period prior to the filing the complaint in this action through the date of certification.

(c) TCPA Revocation Class consists of: All persons in the United States who were called with a pre-recorded voice message or artificial voice regarding a

purported debt owed to ADSW or any ADSW subsidiary or affiliate on their cellular telephone, after they asked not to be called, during the four-year period prior to the filing the complaint in this action through the date of certification.

50. Excluded from the Class and Subclasses are Advanced Disposal, its legal representatives, assigns, and successors, and any entity in which Advanced Disposal has a controlling interest. Also excluded from the Class and Subclasses are the Judge to whom this case is assigned, the Judge's immediate family, and Plaintiff's counsel and their employees. Plaintiff reserves the right to amend the above-stated class definitions based on facts learned in discovery.

51. Plaintiff alleges on information and belief, based on Advanced Disposal's use of pre-recorded voice messages, that the Class and each Subclasses are so numerous that joinder of all members is impractical. There are more than 41 individuals in the Class and each Subclass as defined above.

52. There are questions of law or fact common to the Classes, which common issues predominate over any issues involving only individual class members. Factual and/or legal issues common to each class member include:

   a.   Whether Advanced Disposal's conduct is governed by the TCPA;

   b.   Whether the pre-recorded voice messages sent by Advanced Disposal violate the TCPA;

   c.   Whether the class members are entitled to treble damages based upon the knowing/willfulness of Advanced Disposal's conduct; and

   d.   Whether Advanced Disposal should be enjoined from engaging in

such conduct in the future.

53. Plaintiff's claim is typical of those of the members of the Class and each Subclass. Within the Class and each Subclass, all claims are based on the same material facts and legal theories.

54. Plaintiff will fairly and adequately protect the interests of the Class and each Subclass. He has retained counsel experienced in handling actions involving unlawful practices under the TCPA and class actions. Neither Plaintiff nor his counsel has any interest that might cause them not to vigorously pursue this action.

55. Certification of each Class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is appropriate because:

   a. The questions of law or fact common to the members of the Class and each Subclass predominate over any questions affecting individual members; and

   b. A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

56. Certification of each Class under Rule 23(b)(2) of the Federal Rules of Civil Procedure is also appropriate because Advanced Disposal has acted on grounds generally applicable to the members of the Class and each Subclass, thereby making injunctive or declaratory relief appropriate with respect to each Class as a whole.

57. Mr. Iverson requests that each Class be certified as a hybrid class under Rule 23(b)(3) for monetary damages, and pursuant to Rule 23(b)(2) for injunctive relief.

COUNT I

NEGLIGENT VIOLATIONS OF § 227(b) OF THE TCPA

58. Plaintiff incorporates the above factual allegations.

59. Advance Disposal made unwanted telephone calls with pre-recorded voice messages to the cellular telephones of Plaintiff and the members of the Class and each Subclass.

60. The pre-recorded voice calls were made without the prior express consent of the recipients.

61. The aforesaid calls violate the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii).

62. WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and in favor of the class and sub-class, and against Advanced Disposal, for:

a. An order certifying this case to proceed as a class action;

b. Statutory damages of $500 dollars per call for negligent violations of the TCPA;

c. An injunction requiring Advanced Disposal to cease all communications in violation of the TCPA;

d. Reasonable attorney's fees and costs to be awarded by the Court if a class wide judgment is entered; and

e. Such further relief as this Court may deem appropriate.

COUNT II

KNOWING VIOLATIONS OF § 227(b) OF THE TCPA

63. Plaintiff incorporates the above allegations in ¶1-¶57.

64. Advanced Disposal made unwanted telephone calls with pre-recorded voice messages to the cellar telephones of Plaintiff and the members of the Class and each Subclass.

65. The pre-recorded voice calls were made after Advanced Disposal knew or should have known that it did not have consent to call the class members, especially after revocation of consent.

66. The aforesaid calls violate the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii).

67. WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and in favor of the Class and each Subclass, and against Advanced Disposal, for:

   a. An order certifying this case to proceed as a class action;

   b. Statutory damages of up to $1,500 dollars per call for each knowing/willful violation of the TCPA;

   c. An injunction requiring Advanced Disposal to cease all communications in violation of the TCPA;

   d. Reasonable attorney's fees and costs to be awarded by the Court if a class wide judgment is entered; and

   e. Such further relief as this Court may deem appropriate.

## VII. JURY DEMAND

68. Plaintiff demands trial by jury.

RESPECTFULLY SUBMITTED,

*s/Keith J. Keogh*
Keith J. Keogh
(Fla. Bar No. 0126335)

Michael Hilicki (*pro hac vice*)
KEOGH LAW, LTD.
55 W. Monroe Street, Suite 3390
Chicago, Illinois 60603
Telephone: (312) 726-1092
Facsimile: (312) 726-1093
Email: keith@keoghlaw.com

Christopher P. Martineau, Esq. (*pro hac vice*)
Attorney I.D.#0329265
Christopher A. Johnston, Esq. (*pro hac vice*)
Attorney I.D. #031156X
JOHNSTON | MARTINEAU, P.L.L.P.
2233 Hamline Avenue North, Suite 102
Roseville, MN 55113
Telephone:  (612) 767-7790
Facsimile: (612) 379-0480
cmartineau@jmlegal.com
cjohnston@jmlegal.com

Max Story
MAX STORY LAW
328 2nd Avenue N., Suite 100
Jacksonville Beach, FL 32250
max@storylawgroup.com

Attorneys for Plaintiff