UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JED IVERSON, individually and on behalf of
all others similarly situated,

Plaintiff,

vs.

ADVANCED DISPOSAL SERVICES, INC.
and ADVANCED DISPOSAL SERVICES
SOLID WASTE MIDWEST, LLC,

Defendants.

Civil Action No.  3:18-cv-867-BJD-JBT

Judge:  Hon. Brian J. Davis

Magistrate Judge: Hon. Joel B. Toomey

## PLAINTIFF'S MOTION FOR
## AWARD OF ATTORNEYS' FEES AND EXPENSES, AND
## CLASS REPRESENTATIVE SERVICE AWARD

Pursuant to the parties' settlement agreement and the Court's order granting preliminary approval of the settlement, which directed Plaintiff to file this motion by October 18, 2021, and in support of the relief requested, Plaintiff states:

## INTRODUCTION

Plaintiff, Jed Iverson, individually and as representative of the Class, submits this motion and memorandum in support of the proposed attorneys' fee and expense award and class representative service award as part of the nationwide class action settlement ("Settlement") reached between Mr. Iverson and Defendants, Advanced Disposal Services, Inc. and Advanced Disposal Services Solid Waste Midwest, LLC. (*Appendix 1* (Settlement Agreement)). Plaintiff's and the class members' claims arise under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

1

119986

Under the Settlement, Defendants will pay Three Million, Five Hundred Thousand Dollars ($3,500,000.00) into a Settlement Fund. The Settlement Fund will be divided *pro rata* among all class members who submit a timely claim, after payment of the costs of notice and administration, the court-approved attorneys' fee and expense award, and any class representative service award.

The monetary relief secured on behalf of the Settlement Class is substantial. Plaintiff estimates the pro rata share for each class member who submits a valid claim will be approximately $1,590 at a five percent claim rate, and approximately $795 at a ten percent claim rate. This compares to a potential statutory damages recovery of $500 per call allowed by TCPA (up to treble if the violation is proven to be willful).

Consistent with Eleventh Circuit law, which holds attorney fee awards from a common fund must be determined using the "percentage of the fund" method, Plaintiff moves the Court for a fee award equal to one-third of the Settlement Fund, *i.e.* $1,166,666, plus $63,734.01 to reimburse counsel for the out-of-pocket expenses they incurred litigating the case.[1] Plaintiff also moves the Court for a $10,000 service award if permitted by law,[2] which is well deserved as Mr. Iverson had substantial involvement in the case, including communicating with Class Counsel, assisting counsel in

---

[1] The $62,480.99 expense figure stated in the preliminary approval motion inadvertently omitted certain expenses, including *pro hac vice* fees and third-party subpoena service fees.

[2] As explained in the motion for preliminary approval and below, Plaintiff's request for a class representative service award depends on the final outcome of *Johnson v. NPAS Sols., LLC*, 975 F.3d 1244 (11th Cir. 2020), which held class representative incentive awards are no longer allowed, but which is considering a petition for rehearing *en banc*.

2

discovery, preparing for and sitting for a deposition, and attending the mediation.

Consistent with Federal Rule 23(h), the notice of the Settlement sent to the Class informs Class members of the exact amount of the proposed attorneys' fees award, both as a percentage and dollar amount. Specifically, it advised the Class the fee sought would be "up to one third of the settlement fund, not to exceed $1,166,666, plus reasonable expenses." *See Appendix 2* (Mailed Notice) at p.2 ("What does the settlement provide?").[3] Likewise, the notice expressly advises class members Plaintiff would seek a service award of up to $10,000. *Id.*

As further explained below, the proposed attorneys' fee, expense, and service awards are typical and well within the range of reasonableness.[4] Accordingly, Plaintiff hereby moves for an attorneys' fee award of $1,166,666, plus $63,734.01 in expenses, as well as a $10,000 service award to Plaintiff to the extent permitted by law.

I.      SUMMARY OF THE PROCEEDINGS

A.      THE TCPA

The "[v]oluminous consumer complaints about abuses of telephone technology . . . prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 370-71 (2012); *see also Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335,

---

[3] *See also* http://www.trashcallsettlement.com/media/3595949/aav_class_notice.pdf (the class notice posted on the class settlement website) at §8 ("What does the settlement provide?").

[4] Plaintiff will inform the Court if any objections are made (as the Class has until December 20, 2021 to object), and respond to them. Yet whether the objections are zero or a small number, "a low percentage of objections points to the reasonableness of a proposed settlement and supports its approval." *Lipuma v. American Express Co.*, 406 F.Supp.2d 1298, 1324 (S.D. Fla. 2005).

119986

2343 (2020) ("The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone."). Specifically, Congress found that "automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call," and decided that "banning" such calls made without consent was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Telephone Consumer Protection Act of 1991, Pub. Law 102-243, 105 Stat. 2394, 2394-95, Sec. 2(12), (13) (codified at 47 U.S.C. § 227).

Accordingly, the TCPA makes it unlawful to make any call using an ATDS or an artificial or prerecorded voice to any telephone number assigned to cellular telephone service unless the call is made "for emergency purposes" or with the "prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A)(iii). Furthermore, the TCPA gives recipients of calls violating this ban the right to sue for statutory damages of $500 per violation, which the Court may treble if a violation is shown to be willful. 47 U.S.C. §227(b)(3)(B), (C).

Here, Plaintiff alleged Defendants made prerecorded calls to him and a proposed class of other persons who did not ask Defendants to call them. Specifically, Defendants made prerecorded debt collection calls to Plaintiff and the proposed class members after acquiring their cell numbers in connection with purchasing the assets of their former waste-removal service providers.[5] Plaintiff claims Defendants could not obtain "prior express consent" to call him or the class members simply by buying their

---

[5] Plaintiff also alleged Defendants kept calling him after he expressly told them on multiple occasions to stop calling him.

name and contact information from third parties. Accordingly, Plaintiff claims Defendants' calls violate the TCPA.

Defendants vigorously denied Plaintiff's allegations and asserted, *inter alia*, they had consent to call the acquired numbers because asset purchases made the called persons Defendants' customers, and that Plaintiff and the class members gave consent by other means as well. The proposed Settlement will resolve all claims in this action.

As explained in more detail below, the Settlement was not achieved until after a substantial amount of work, including extensive written and oral discovery, expert discovery, full class certification and summary judgment briefing, and a full-day mediation. Even then, the case did not settle until months after the mediation, and months of negotiations to work out the terms of the Settlement agreement.

## B. THE LITIGATION

This class action took approximately three years of litigation to resolve. In response to the complaint filed July 11, 2018, Defendant immediately moved to strike Plaintiff's class allegations, which was fully briefed. (*See Appendix 3* (Declaration of Keith J. Keogh) at ¶7).

Thereafter, Plaintiff moved to amend the complaint, which was granted over Defendant's objection. (*Id.* at ¶8). Defendant again moved to strike the class allegations, which was again fully briefed, and the Court denied the motion. (*Id.*).

Discovery ensued, with Class Counsel serving five sets of discovery requests during the course of the litigation. (*Id.* at ¶9). Defendants' responses raised a variety issues, necessitating numerous Rule 37 conferences and a motion to compel. (*See id.*

119986

at ¶9, ¶12). In the end Defendant produced more than twenty-seven thousand pages of documents, plus data for hundreds of thousands of calls, along with corresponding customer data for the called individuals, all of which Class Counsel had to analyze to build the case. (*Appendix 3* (Keogh Decl.) at ¶9).

This case also required third-party discovery. This included Class Counsel subpoenaing records and obtaining a declaration from the entity that designed the Five9 calling system used to make the calls at issue, to establish facts concerning the capabilities, operation, and functioning of the system, as well as subpoenaing and obtaining a declaration from the seller of the trash removal service company that led Defendants to call Plaintiff. (*Id.* at ¶10).

Class Counsel also responded to full written discovery, which required counsel to work with Plaintiff to craft responses, prepare Plaintiff's document production, negotiate with Defendants over their request for supplementation of Plaintiff's initial discovery answers, and work to craft the supplemental responses. (*Id.* at ¶9).

Oral discovery was also substantial. Plaintiff sat for his deposition, and Class Counsel planned and conducted five depositions of Defendants' witnesses, including its corporate designees. (*Appendix 3* (Keogh Decl.) at ¶11). These depositions were critical to gathering evidence needed for class certification, to prove Plaintiff's and the class members' claims, and to overcome Defendants' defenses.

Likewise, Class Counsel worked extensively with Plaintiff's expert to help her prepare her initial and rebuttal reports concerning Defendants' call records and customer data, which was essential to defining and ascertaining the Class. (*Id.*).

6

119986

Likewise, Class Counsel had to prepare for her deposition as well as depose Defendants' counter-expert, who issued multiple reports. (*Appendix 3* (Keogh Decl.) at at ¶11).

Motion practice was also significant. In addition to the multiple defense motions to strike class allegations, Plaintiff's motion to compel discovery, and a variety of other procedural motions, the parties fully briefed Plaintiff's motion for class certification (which included a reply), Defendants' motion for summary judgment (which included a sur-reply), and each side's respective *Daubert* motions. (*See id.* at ¶12). The docket for this case has more than one-hundred-and-fifty entries.

During the pendency of the parties' class certification, summary judgment, and *Daubert* motions, the parties also conducted substantial settlement discussions. The parties each prepared a detailed mediation memorandum, and participated in a full-day mediation with a well-respected third-party mediator, the Honorable Morton Denlow, who has extensive experience mediating TCPA class actions. (*See id.* at ¶13).

Although the mediation did not result in a settlement, the parties kept negotiating and eventually reached an agreement in principle. (*Id.* at ¶14). Class Counsel then spent the next several months negotiating the terms of the written settlement agreement, the proposed class notices, and the proposed preliminary and final approval orders, which Class Counsel also took the lead in drafting. (*Id.* at ¶14). Finally, Class Counsel prepared a detailed motion for preliminary approval of the Settlement. (*Id.*).

119986

On September 17, 2021, this Court entered an order granting the motion for preliminary approval, directing that notice of the Settlement be sent to the Class, and setting February 16, 2022 as the date of Final Approval Hearing. (Dkt. 156 at 6).

It is worth noting the Settlement contains no agreement as to what the attorneys' fee award should be, and no "clear sailing" agreement relating to attorneys' fees either. Instead, the parties only agreed that Class Counsel would move the Court for an award of attorneys' fees and expenses. (*Appendix 1* (Settlement Agreement) at §VI, ¶3).

Pursuant to that agreement, and the Court's order granting the Settlement preliminary approval, Plaintiff respectfully moves for an award of attorney fees' equal to one-third of $3,500,000.00 Settlement Fund, which is. $1,166,666.00, plus $63,734.01 to reimburse the out-of-pocket expenses counsel incurred in prosecuting the class claims. As explained below, this motion should be granted.

## II.    THE PROPOSED FEE AND EXPENSE AWARDS ARE REASONABLE

Courts have long recognized when counsel's efforts result in the creation of a common fund that benefits class members, counsel has a right to be compensated from that fund for their successful efforts in creating it. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (a "lawyer who recovers a common fund … is entitled to a reasonable attorneys' fee from the fund as a whole"). As *Boeing* explains:

> [The class members'] right to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel. Unless absentees contribute to the payment of attorney's fees incurred on their behalves, they will pay nothing for the creation of the fund and their representatives may bear additional costs. The judgment entered by the District Court and affirmed by the Court of Appeals rectifies this inequity

119986

by requiring every member of the class to share attorney's fees to the same extent that he can share the recovery.

*Id.* at 480-481.

Following *Boeing*, this Court recently granted the same fee award sought here in another TCPA case brought by Class Counsel, *i.e.*, one-third of a $3,500,000 common fund settlement. *Cook v. Palmer*, 16-cv-673-BRD-JRK, Dkt. 210 at ¶16 (M.D. Fla. Jun. 5, 2020) (Davis, J.) (citing, *inter alia*, *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991) and *Boeing*, 444 U.S. at 478). As in *Cook*, the reasonableness of the proposed award here is confirmed both as a percentage of the settlement, as well as under the factors for evaluating fee motions in the Eleventh Circuit (the *Johnson/ Camden I* factors).

A.    The Fee Amount Is Reasonable as a Percentage of the Total Settlement

Consistent with *Boeing*, the notice informed class members Class Counsel would move for a fee award from the settlement fund on a percentage-of-the-fund basis, and seek one-third of the fund. (*See Appendix 2* (Mailed Notice) at p.2). This is the correct method for determining the fee award because the Eleventh Circuit holds attorneys' fees awarded from a common fund "shall be based upon a reasonable percentage of the fund established for the benefit of the class." *In re Equifax Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1278 (11th Cir. 2021) (quoting *Camden I Condo.*, 946 F.2d at 774); and *Cook*, 16-cv-673-BRD-JRK, Dkt. 210 at ¶16(h) (TCPA case, determining fee award as a percentage of the fund).

9

Furthermore, the requested fee of one-third of the fund easily falls within the range of reasonableness, which can be as high as 50% of the fund in this Circuit. *See Camden I Condo.*, 946 F.2d at 774-775. Specifically, courts in this circuit routinely approve one-third percentage fee awards. *See Muransky v. Godiva Chocolatier, Inc.*, 922 F.3d 1175, 1195-96 (11th Cir. 2019) (overruling objections to 33% fee award ($2.1 million) from a $6.3 million settlement) (vacated on other grounds); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295-96 (11th Cir. 1999) (affirming a 33% fee award ($13.3 million) from a $40 million settlement); *Seghroughni v. Advantus Rest., Inc.*, 2015 U.S. Dist. LEXIS 64602 at *2 (M.D. Fla. May 13, 2015) ("An attorney's fee ... which is one-third of the settlement fund ... is fair and reasonable…"); *Cabot E. Broward 2 LLC v. Cabot*, 2018 U.S. Dist. LEXIS 192706 at *20 (S.D. Fla. Nov. 9, 2018) (citing "19 cases from this Circuit in which attorneys' fees amounting to 33% or more of a settlement fund were awarded," including settlements of $310 million, $77.5 million, $75 million, $40 million, and $25 million); *see also Wolff v. Cash 4 Titles*, 2012 U.S. Dist. LEXIS 153786 at *13 (S.D. Fla. Sept. 26, 2012) ("One-third of the recovery is considered standard in a contingency fee agreement.");

In particular, percentage fee awards equal to or greater than one third of the fund are commonly approved in TCPA class actions, including TCPA class actions brought in this District. *See Cook*, 16-cv-673-BRD-JRK, Dkt. 210 at ¶16 (granting one third of a $3.5 million fund to Class Counsel here in a TCPA case); *see also Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 503 (N.D. Ill. 2015) (granting 36% fee award in TCPA

10

case); *In re Capital One*, 80 F. Supp. 3d 781, 807 807 (N.D. Ill. 2015) (granting 36% fee award from first $10 million of the settlement); *Martin v. Dun & Bradstreet, Inc.*, No. 12-215 (N.D. Ill. Jan. 16, 2014) (Dkt. No. 63) (granting one-third percentage fee award in TCPA case); *Hanley v. Fifth Third Bank*, No. 12-1612 (N.D. Ill. Dec. 23, 2013) (Dkt. No. 87) (same); *Martin v. JTH Tax, Inc.*, No. 13-6923 (N.D. Ill. Sept. 23, 2015) (same). Accordingly, the proposed fee award here – the same award this Court recently granted Class Counsel in a TCPA case in *Cook* – is reasonable on a percentage basis.

B.     The Proposed Fee Award Is Also Reasonable Under *Johnson/Camden I*

The Eleventh Circuit has endorsed using the factors articulated *Johnson v. Georgia Highway Expr., Inc.*, 488 F.2d 714 (5th Cir. 1974), to confirm the award's reasonableness. *See Muransky*, 922 F.3d at 1195 (citing *Camden I*, 946 F.2d at 775). The *Johnson/ Camden I* factors are: (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is contingent; (7) time limitations imposed by the circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Camden I*, 946 F.2d at 772, n.3. These factors confirm the reasonableness of the proposed fee award here.

1.  The Case Involved Difficult Issues; the Risk of Nonpayment and Not Prevailing on the Claims Was High.

The second, sixth, and tenth *Johnson/Camden I* factors—the novelty and difficulty of the issues, whether the fee is contingent, and the "undesirability" of the case, respectively—are interrelated and support the proposed award.

This case is novel and difficult on multiple levels. First, had the Court reached a decision on Plaintiff's class certification motion, it is an open issue as to whether the Court would have granted it. As Defendants noted in their class certification opposition brief, recently a number of courts in this District have denied class certification in TCPA cases. *See Morgan v. Adventist Health System/Sunbelt, Inc.*, 2020 U.S. Dist. LEXIS 62299 (M.D. Fla. Jan. 15, 2020) (denying certification in TCPA case); *Sliwa v. Bright House Networks, LLC*, 2019 U.S. Dist. LEXIS 167805 (M.D. Fla. Sep. 27, 2019) (same); *Wilson v. Badcock Home Furniture*, 329 F.R.D. 454 (M.D. Fla. 2018) (same).

Second, and related to the class certification issue, Plaintiff faced the possibility the Court would grant Defendants' pending *Daubert* motion against her expert. Defendants' expert claimed Plaintiff's expert made a number of errors in her initial report and, although she explained the alleged errors in her rebuttal, the Court may have agreed with Defendants' expert. This would have been fatal to class certification because Plaintiff's argument the class satisfied the class ascertainability requirement imposed by Federal Rule 23 was based on his expert's analysis. (Dkt. 95 (Amended Class Motion) at p.2, and Dkt. 115 (Class Cert. Reply) at fn. 2, 8 and 13).

Third, Plaintiff faced the possibility the Court might grant Defendants' pending summary judgment motion. Having "prior express consent" to call is a defense to a TCPA claim and, among other arguments, Defendants claimed they had consent to call the entire class because the class members were their customers after Defendants bought their accounts from their prior trash removal service providers. This presented the issue of whether Defendants could "buy" the class members' consent from a third party and, although Plaintiff believed he would win the issue for the reasons stated in his opposition to Defendants' motion, there was no controlling authority on the issue here, and thus the issue could be decided either way.

Finally, assuming Plaintiff prevailed on class certification, the *Daubert* issues, and the merits, the resulting damage award itself presents a novel issue. Some courts view awards of aggregate, statutory damages with skepticism and consider reducing such awards—even after a plaintiff has prevailed on the merits—on due process grounds. *See, e.g., Aliano v. Joe Caputo & Sons - Algonquin, Inc.,* 2011 U.S. Dist. LEXIS 48323 at *13 (N.D. Ill. May 5, 2011) ("Such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature."); *but see Phillips Randolph Enters., LLC v. Rice Fields*, 2007 U.S. Dist. LEXIS 3027 at *7-8 (N.D. Ill. Jan. 11, 2007) ("Contrary to [defendants'] implicit position, the Due Process clause of the 5th Amendment does not impose upon Congress an obligation to make illegal behavior affordable, particularly for multiple violations.").

In addition to these myriad challenges, the ability to recover fees and expenses here has always been contingent on a successful outcome. Class Counsel had to

119986

advance the fees and expenses, and risked receiving nothing in return. This is important because:

> A determination of a fair fee for Class Counsel must include consideration of the contingent nature of the fee, the wholly contingent outlay of out-of-pocket sums by Class Counsel, and the fact that the risks of failure and nonpayment in a class action are extremely high.

*Pinto v. Princess Cruise Lines, Ltd.*, 513 F.Supp.2d 1334, 1339 (S.D. Fla. 2007). Indeed, "[a] contingency fee arrangement often justifies an increase in the award of attorney's fees." *In re Checking Acc't Overdraft Litig.*, 830 F.Supp.2d 1330, 1364 (S.D. Fla. 2011) (*quoting In re Sunbeam Sec. Litig.*, 176 F.Supp.2d 1323, 1335 (S.D. Fla. 2001)). The risk was enhanced here by the fact Class Counsel were up against two well-heeled defendants with sophisticated class action defense counsel. Accordingly, "[c]ases recognize that attorneys' risk is ''perhaps the foremost factor in determining an appropriate fee award." *Pinto,* 513 F.Supp.2d at 1339 (collecting cases) (internal quotes omitted).

The case's novelty, difficulty and contingent nature also demonstrate its undesirability. In other recent TCPA class actions requiring substantial litigation activity in this District, class certification was denied. *See Morgan*, 2020 U.S. Dist. LEXIS 62299 (denying certification for TCPA class); *Sliwa*, 2019 U.S. Dist. LEXIS 167805 (same); *Wilson*, 329 F.R.D. 454 (same). The TCPA does not contain a fee-shifting provision, and the typical TCPA plaintiff only receives a small number of calls for which they typically can expect to recover no more than $500 each. Thus, when

14

class certification is denied, the plaintiff's attorney has no practical means to recover their fees or out-of-pocket expenses.

Few lawyers will take a case that consumes significant attorney time, involves uncertain questions, and requires them to potentially advance substantial amounts of out-of-pocket expenses and risk getting nothing, especially given that the inherent possibility of failing to certify the class, the risk of losing on summary judgment or at trial, and the risk of losing any victory on appeal that Class Counsel faced here.

Finally, although Class Counsel achieved an excellent result for the Class, that outcome was anything but certain when they took the case, as evidenced by the opinions above denying class certification. Further, although Class Counsel have had success in many class actions, they have recovered nominal amounts in others, including in TCPA cases. *See, e.g.*, *Morgan*, *Wilson*, and *Sliwa*, *supra*, as well as *Flaum v. Buth-Na-Bodhaige, Inc.*, 15-cv-62695, Dkt. 67 (S.D. Fla.) (although Class Counsel filed their case first, the class claims were settled by a later-filed, competing class action that only recovered gift cards, and Plaintiff's counsel received nothing); and *Kirchein v. Pet Supermarket, Inc.*, 297 F.Supp.3d 1354, 1355-56 (S.D. Fla. 2018) (defendant successfully moved to dismiss case for lack of standing *after* agreeing to settlement and after settlement had been granted preliminary approval).[6]

---

[6] Class actions are inherently risky. For example, in another case Class Counsel was involved in, the class was decertified two years after certification, and after notice had been sent to the Class, which resulted in Class Counsel incurring hundreds of thousands of dollars in notice costs, plus the additional cost to send notice of the decertification. *See Johnson v Yahoo!, Inc.*, 2018 U.S. Dist. LEXIS 23564 (N.D. Ill. Feb. 13, 2018) (order decertifying class after notice). Similarly, in *Braver v Northstar*, 17-cv-00383-F (D. Ok 2020), a co-defendant filed for

119986

There is certainly no guarantee of success at the class certification stage, or on the merits if the case is litigated to judgment, or on any appeal that may follow. Accordingly, this factor also weighs in favor of the proposed fee award. *See In re Checking Account Overdraft Litig.*, 830 F.Supp.2d at 1364.

2.   Class Counsel Achieved an Excellent Result for the Class.

The eighth *Johnson/Camden I* factor looks to the amount involved in the litigation "with particular emphasis on the 'monetary results achieved' in the case" by class counsel. *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F.Supp.2d 1185, 1202 (S.D. Fla. 2006); *see also Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269 (D.C. Cir. 1993) ("In the common fund case, ... the monetary amount of the victory is often the true measure of success...").

Here, the mediated settlement provides each Settlement Class Member who submits a timely claim form will receive a pro rata share of the $3,500,000 Settlement Fund. Plaintiff estimated the pro rata share for each class member who submits a valid claim would be approximately $1,590 at a five percent claim rate and approximately $795 at a ten percent claim rate. This favorably compares to a potential statutory damage recovery of $500 per call allowed by TCPA (up to treble if the violation is shown to be willful).

---

bankruptcy after class certification, notice to class, and judgment, and in *Kinnamon v. Ditech Financial, LLC.*, 16-646 JAR, Dkt. 218 (E.D. Mo. Dec. 2, 2019), the case was dismissed due to bankruptcy after class certification and summary judgment were fully briefed.

119986

Moreover, the expected recovery per class member claim is significantly better than the per-class member recovery in the vast majority of TCPA class settlements approved in this Circuit and elsewhere. *See, e.g., James v. JPMorgan Chase Bank, N.A.,* 2017 U.S. Dist. LEXIS 91448 at *3 (M.D. Fla. June 5, 2017) (holding class counsel's result of "$81 per class member who submitted a claim equals or exceeds the typical award in a TCPA class action."); *Markos v. Wells Fargo Bank, N.A.,* 2017 U.S. Dist. LEXIS 17546 at *11 (N.D. Ga. Jan. 30, 2017) (finding $24 per class member to be "an excellent result"); *Wojcik v. Buffalo Bills, Inc.,* No. 8:12-cv-02414-SDM-TBM at Dkt. 77, p.18 and Dkt. 79 (M.D. Fla. Aug. 25, 2014) (class claimants received a $57.50-$75.00 gift card); *In re Enhanced Recovery Co.,* 13-md-2398-Orl-37GJK (M.D. Fla. Jul. 29, 2014) at Dkt. 123 at p.1 (class only received injunctive relief ); *Hashw v. Dep't Stores Nat'l Bank,* 182 F.Supp.3d 935, 944 (D. Minn. 2016) (approving a TCPA settlement that provided $33.20 per claimant); *In re Capital One TCPA Litig.,* 12-cv-10064 at Dkt. 329, p.42 (N.D. Ill. Feb. 12, 2015) (settlement approved where each claimant would be awarded $39.66) (Holderman, J.); *Kramer v. Autobytel,* 2012 U.S. Dist. LEXIS 185800 (N.D. Cal. Jan. 27, 2012) (approving $12.2 million settlement for 47 million text messages); *Malta v. Fed. Home Loan Mortg. Corp.,* 2013 U.S. Dist. LEXIS 15731 (S.D. Cal. Feb. 5, 2013) (approving $17.1 million settlement for 5,887,508 class members); *Adams v. AllianceOne Receivables Mgmt. Inc.,* No. 08-cv-00248, Dkt. Nos. 116 & 137 (S.D. Cal. Sept. 28, 2012) (approving $9 million settlement for 6,079,411 class members); *Palmer v. Sprint Nextel Corp.,* No. 09-cv-01211, Dkt. Nos. 84 & 91 (W.D.

Wash. Oct. 21, 2011) (approving $5.5 million settlement for approximately 18.1 million class members). Accordingly, this factor weighs strongly in favor of the proposed fee award.

### 3. The Time and Labor Required, Preclusion from Other Employment and the Time Limits Imposed Justify the Proposed Fee Award.

The first, fourth, and seventh *Johnson/Camden I* factors – the time and labor, preclusion of other employment, and time limitations imposed, respectively – are also interrelated inquires and each support the reasonableness of the request. Class Counsel engaged in litigation against two well-heeled defendants and sophisticated defense counsel. The work spanned approximately three years and included counsel's pre-suit investigation, preparing the original and amended complaints, briefing Defendants' two motions to strike the class allegations, preparing five sets of discovery, conducting numerous Rule 37 conferences to resolve deficiencies in the responses, filing a motion to compel, analyzing more than twenty-seven thousand pages of documents, analyzing the call data for several hundred thousand calls and corresponding customer data, engaging and working with an expert to ascertain the class, and preparing her for deposition, planning and conducting the depositions of five corporate witnesses and representatives, planning and conducting the deposition of Defendants' expert, engaging in extensive motion practice, including class certification, summary judgment, and *Daubert* motions, attending a full-day mediation (including preparing a detailed mediation memorandum), conducting additional negotiations beyond the

18

mediation to reach a settlement, and preparing the settlement agreement, class notices, proposed orders, and a detailed preliminary approval motion.

Further, Class Counsel will be communicating with class members who contact counsel in response to the notice, preparing a detailed memorandum in support of final approval, and working with the claims administrator to answer questions and supervise the distribution of payments. All of this work has and will continue to divert substantial time and resources from other matters. *See Yates v. Mobile Cnty. Pers. Bd.*, 719 F.2d 1530, 1535 (11th Cir. 1983) (the expenditure of time "necessarily had some adverse impact upon the ability of counsel for plaintiff to accept other work, and this factor should raise the amount of the award.") (rec. of special master); *see also Stalcup v. Schlage Lock Co.*, 505 F.Supp.2d 704, 708 (D. Colo. 2007) (noting "priority work that delays a lawyer's other work is entitled to a premium."). Thus, the above factors also support the proposed fee award.

### 4.   The Requested Fee is Consistent with Other Class Settlements.

The fifth and twelfth *Johnson/Camden I* factors, the customary fee and awards in similar cases, also support approval. Many courts, including this Court, have approved one-third percentage fee awards in consumer class actions, including TCPA class actions. *See Muransky*, 922 F.3d at 1195-96 (affirming one-third percentage fee award in consumer class action over class member objections) (vacated on other grounds); *Waters*, 190 F.3d at 1295-98 (affirming a one-third percentage fee award ($13.3 million) in a $40 million settlement); *Cook*, 16-cv-673-BRD-JRK, Dkt. 210 at ¶16(h) (granting Class

Counsel here one third of a $3.5 million fund in a TCPA case); *Atkinson v. Wal-Mart Stores, Inc.*, 2011 U.S. Dist. LEXIS 150274 at *18 (M.D. Fla. Dec. 29, 2011) (granting a fee award of one-third of the common fund); *Guarisma v. Microsoft Corp.*, 2017 U.S. Dist. LEXIS 227871, *11 (S.D. Fla. Oct. 27, 2017) (same); *Legg v. Lab. Corp. of Am. Holdings*, 2016 U.S. Dist. LEXIS 122695 at *10 (S.D. Fla. Feb. 18, 2016) (same); *Legg v. Spirit Airlines, Inc.*, 14-cv-61978-JIC, Dkt. 151 at pp.5-6 (S.D. Fla. Aug. 2, 2016) (same); *Wood v. J. Choo*, 2017 U.S. Dist. LEXIS 204370 at *11-15 (S.D. Fla. May 9, 2017) (same); and *e.g Wolff*, 2012 U.S. Dist. LEXIS 153786 at *13 ("One-third of the recovery is considered standard…"); *Dear v. Q Club Hotel, LLC*, 2018 U.S. Dist. LEXIS 42787 at *11 (S.D. Fla. Mar. 14, 2018) ("A review of the case law reveals that a 33.3% fee award is a consistent award in class action common fund cases."). Accordingly, this factor also favors the proposed fee award.

### 5.   This Case Required a High Level of Skill.

The remaining *Johnson/Camden I* factors – the skill required to perform the legal services properly, and the experience, reputation, and ability of the attorneys, all confirm that the fees and expenses sought are reasonable.

As shown, Class Counsel achieved a settlement that confers substantial monetary benefits on the class despite litigating against a sophisticated and well-financed defendant represented by top-tier counsel. *See In re Sunbeam Sec. Litig.*, 176 F.Supp.2d at 1334 ("in assessing the quality of representation, courts have also looked to the quality of the opposition the plaintiffs' attorneys faced."). This outcome was made

possible by Class Counsel's extensive experience in litigating class actions of similar size, scope and complexity.

Class Counsel regularly engage in TCPA and complex litigation involving consumer issues, and have extensive class action experience. (*See Appendix 3* (Keogh Decl.) at ¶2, ¶4, and ¶19-¶22; *Appendix 4* (Martineau Decl.) at ¶4-¶5; *Appendix 5* (Story Decl.) at ¶3-¶6). Class Counsel knew the work that achieving an outcome comparable to this Settlement would take based on their success in prior cases, what that work would yield, the issues they faced at every stage, the potential recovery to be had, and the chances of achieving it. This experience enabled Class Counsel to convince Defendants not only that Class Counsel were adequate to the task and willing to do what it took to achieve an excellent result, but that they genuinely understood what the case was worth given the law, facts and risks (for both sides). Even then, the case did not settle until after full discovery, after class certification and summary judgment were fully briefed, and after a mediation with a well-respected third-party neutral.

In short, the *Johnson/Camden I* factors confirm the proposed attorneys' fee award is reasonable. Pursuant to Fed. R. Civ. P. 23(h) and 54(d)(2), it should be approved.

C.     The Expenses Incurred Are Reasonable and Should Be Approved.

The settlement also permits Class Counsel to seek recovery of expenses incurred on behalf of the Class. This figure totals $63,734.01, and largely consists of expenses related to experts, depositions, and the mediation. (*See Appendix 3* (Keogh Decl.) at ¶18; *Appendix 4* (Martineau Decl.) at ¶7; and *Appendix 5* (Story Decl.) at ¶14). None of

21

for overhead items like photocopying, research, telephone, meals, and all were reasonably necessary to prosecute the case. Thus, counsel's out-of-pocket expenses should be approved. *See, e.g., Cook*, 16-cv-673-BRD-JRK, Dkt. 210 at ¶16(h) (M.D. Fla. Jun. 5, 2020) (Davis, J.) (granting Class Counsel a one-third percentage fee award plus expenses in a TCPA class case); *Wolff*, 2012 U.S. Dist. LEXIS 153786 at *19 (granting one-third percentage fee award plus $112,157 in expenses); and *Dear*, 2018 U.S. Dist. LEXIS 42787 at *11 (granting one-third percentage fees award, plus $304,684 in expenses).

## III.   THE PROPOSED SERVICE AWARD IS REASONABLE

Service awards or incentive payments are commonly awarded to class representatives for their service to the class in vindicating their rights and enabling them to secure relief on their common claims, as contemplated by Federal Rule 23. *See Muransky*, 922 F.3d at 1196 ("Many circuits have endorsed incentive awards and recognize them as serving the purposes of Rule 23.") (citations omitted) (vacated on other grounds).

Subject to this Court's approval and the finality of *Johnson v. NPAS Sols., LLC*, 975 F.3d 1244 (11th Cir. 2020), mandate withheld, No. 18-12344, (Nov. 9, 2020), which held class representative incentive awards are no longer allowed but is considering a petition for rehearing *en banc*, Plaintiff respectively requests an award of $10,000 from the fund.

Given the status of *Johnson*, courts in this District have found this wait-and-see approach concerning class representative service awards to be appropriate. *See Mosley*

22

119986

*v. Lozano Ins. Adjusters, Inc.*, 2021 WL 293243 at *5 (M.D. Fla. Jan. 11, 2021) (recommending deferring ruling on the service award pending *NPAS*), R&R adopted, 2021 WL 289031 (M.D. Fla. Jan. 28, 2021); and *Mercer v FDS Bank and Dept. Stores Nat'l Bank,* 6:17-cv-692-Orl-78EJK at Dkt. 281, p.4 (M.D. Fla. July 20, 2021) ("recommend[ing] the Court approve the contingent incentive award."), R&R adopted August 31, 2021 at Dkt. 282.

In the event service awards are allowed, the amount sought here is more than reasonable. *See*, *e.g.*, *Cook*, 16-cv-673-BRD-JRK, Dkt. 210 at ¶17 (M.D. Fla. Jun. 5, 2020) (Davis, J.) (granting $20,000 service award in TCPA case); *Cooper v. NelNet, Inc.*, 14-cv-314, Dkt. 85, p.5, ¶11 (M.D. Fla. Aug. 4, 2015) (approving a $25,000 service award in TCPA case); *Cabot E. Broward 2 LLC*, 2018 U.S. Dist. LEXIS 192706 at *28-29 (S.D. Fla. Nov. 9, 2018) (approving $50,000 per plaintiff, noting "[t]ogether, the requested awards total $100,000, or 0.1% the amount recovered for the Class, which is well within the range of incentive awards in other cases.") (collecting cases approving service awards ranging from $15,000 to $1.76 million); *Allen v. JPMorgan Chase Bank, NA*, No. 13-8285, Dkt. 93 at ¶18  (N.D. Ill. Oct. 21, 2015) (approving $25,000 service award in TCPA case); *Desai v. ADT Sec. Servs., Inc.*, No. 11-1925, Dkt. 243 at ¶20 (N.D. Ill. Feb. 27, 2013) (granting $30,000 service award in TCPA class settlement); *see also Gevaerts v. TD Bank, N.A.*, 2015 U.S. Dist. LEXIS 150354 at *26 (S.D. Fla. Nov. 5, 2015) ($10,000 incentive awards to multiple plaintiffs) (*citing Spicer v. Chi. Bd. of Options Exchange, Inc.*, 844 F.Supp. 1226, 1267-68 (N.D. Ill. 1993)

119986

(collecting cases approving incentive awards ranging from $5,000 to $100,000, and approving $10,000 for each plaintiff); and *Muransky*, 922 F.3d at 1197 (affirming $10,000 incentive award in case that settled only months after being filed, where plaintiff was not deposed and did not have to answer written discovery) (vacated on other grounds).

Furthermore, Plaintiff's proposed award is justified not only by the excellent results achieved for the Settlement Class, but also his own personal efforts in assisting Class Counsel in discovery, being deposed, and attending the mediation. Thus, Plaintiff more than subjected himself to the mere "inconvenience and time delays" the Eleventh Circuit found sufficient to justify a $10,000 service award. *See Muransky*, 922 F.3d at 1197 ($10,000 service award affirmed where "the District Court observed that Dr. Muransky 'was subjecting himself to inconvenience and time delays that didn't materialize as much as they might have, but they still were a possibility when he signed on as the class representative.'") (vacated on other grounds).

Once again, the notice expressly advised class members of the exact service award Plaintiff would seek, and the proposed $10,000 amount will not have a material impact on class members' pro rata share of this $3,500,000 settlement. Thus, subject to the final ruling in *Johnson v. NPAS Sols., LLC*, 975 F.3d 1244 (11th Cir. 2020), the proposed service award should be approved.

CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court award class counsel attorneys' fees of $1,166,666.00, which is one third of the common fund, plus $63,734.01 for reimbursement for the expenses class counsel incurred in prosecuting the class claims. In addition, Plaintiff requests the Court award him $10,000 as a service award if permitted by law.

Respectfully Submitted,

_s/Keith J. Keogh_
Keith J. Keogh (FBN: 0126335)
Michael S. Hilicki (_pro hac vice_)
Keogh Law, Ltd.
55 W. Monroe St., Ste. 3390
Chicago, IL 60603
312.726.1092 (Main)
Keith@KeoghLaw.com
MHilicki@KeoghLaw.com

Christopher P. Martineau, Esq. (_pro hac vice_)
Attorney I.D. #0329265
Christopher A. Johnston, Esq. (_pro hac vice_)
Attorney I.D. #031156X
JOHNSTON | MARTINEAU, P.L.L.P.
2233 Hamline Avenue North, Suite 102
Roseville, MN 55113
Telephone: (612) 767-7790
Facsimile: (612) 379-0480
cmartineau@jmlegal.com
cjohnston@jmlegal.com

Max Hunter Story
MAX STORY LAW
328 2nd Avenue N., Suite 100
Jacksonville Beach, FL 32250
max@storylawgroup.com

Class Counsel

119986