UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JED B. IVERSON, INDIVIDUALLY AND
ON BEHALF OF ALL SIMILARLY
SITUATED INDIVIDUALS,

       Plaintiff,

v.                            NO.:  3:18-CV-00867-BJD-JBT

ADVANCED DISPOSAL SERVICES, INC.,
and ADVANCED DISPOSAL SERVICES SOLID
WASTE MIDWEST, LLC

       Defendants.

_____/

UNOPPOSED MOTION FOR
FINAL APPROVAL OF CLASS ACTION SETTLEMENT

       Plaintiff Jed Iverson, pursuant to Federal Rule of Civil Procedure 23, moves for final approval of the nationwide class action settlement agreement reached with Defendants, Advanced Disposal Services, Inc. and Advanced Disposal Services Solid Waste Midwest LLC., for claims under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. The Settlement is all cash, it ends three years of litigation, and has resulted in a near-record-breaking claim rate of almost nineteen percent. The settlement Agreement is attached as *Appendix 1*.

       The Settlement provides Defendants shall pay Three Million, Five Hundred Thousand Dollars ($3,500,000.00) into a Settlement Fund, and each class member who filed a valid claim will receive more than $410.00 cash. This is a significant portion of the statutory damages available under TCPA, which provides for $500 per

123491

violation (up to treble if willful). In fact, on a per-class-member basis, this Settlement exceeds the vast majority of TCPA settlements granted final approval (including in this District), and it is nearly identical to the TCPA class settlement this Court recently approved in *Cook v. Wal-Mart Stores, Inc.*, 16-cv-673-BRD-JRK, Dkt. 210 (M.D. Fla. Jun. 5, 2020) (Davis, J.) (TCPA class settlement paying $3.5 million to more than 23,000 class members).

On September 17, 2021, this Court granted the Settlement preliminary approval, finding the settlement within the range of reasonableness, and thus that the class should be given notice of the Settlement and an opportunity to object to the Settlement or opt out of it. (*Appendix 2* (Preliminary Approval Order, Dkt. 156) at ¶3). Nothing has changed to alter the Court's preliminary determination.

To the contrary, the class members' response to the Settlement has been overwhelmingly positive, as noted above. More than fifty-two hundred class members (nearly nineteen percent) filed claims to receive the benefits of the Settlement, far-exceeding the single-digit claim rates achieved in many settlements granted final approval, including settlements under the TCPA.

Furthermore, no class member objected to *any* aspect of the Settlement (including the proposed attorneys' fee and class representative service awards), and no class member opted out of the Settlement. To be sure, this complete absence of objections or even "a low percentage of objections points to the reasonableness of a proposed settlement and supports its approval." *Lipuma v. American Express Co.*, 406 F.Supp.2d 1298, 1324 (S.D. Fla. 2005).

2

123491

Thus, as further explained below, the Settlement easily merits final approval, and both this motion and Plaintiff's pending motion for an award of attorneys' fees, expenses, and a class representative service award (Dkt. 157), should be granted.

## I.    HISTORY OF PROCEEDINGS

### A. The TCPA

The "[v]oluminous consumer complaints about abuses of telephone technology . . . prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 370-71 (2012); *see also Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020) ("The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone."). Specifically, Congress found "automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call," and decided "banning" the making of such calls without consent was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Telephone Consumer Protection Act of 1991, Pub. Law 102-243, 105 Stat. 2394, 2394-95, Sec. 2(12), (13) (codified at 47 U.S.C. § 227).

Accordingly, the TCPA makes it unlawful to make any call using an ATDS or an artificial or prerecorded voice to any telephone number assigned to cellular telephone service unless the call is made "for emergency purposes" or with the "prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A)(iii). Furthermore, the TCPA gives recipients of calls violating this ban the right to sue for statutory

123491

damages of $500 per violation, which the Court may increase up to treble if a violation is shown to be willful. 47 U.S.C. §227(b)(3)(B), (C).

Here, Plaintiff alleged Defendants made prerecorded calls to him and a proposed class of other persons who did not ask Defendants to call them. Specifically, Defendants made prerecorded debt collection calls to Plaintiff and the proposed class members after acquiring their cell numbers in connection with purchasing the assets of their former waste-removal service providers.[1] Plaintiff claimed Defendants could not obtain "prior express consent" to call him or the class members simply by buying their name and contact information from third parties. Accordingly, Plaintiff claimed the calls violated the TCPA.

Defendants vigorously denied Plaintiff's allegations and asserted, *inter alia*, they had consent to call the acquired numbers because asset purchases made the called persons Defendants' customers, and that Plaintiff and class members gave consent by other means as well. The Settlement resolves all claims in this action.

B. The Litigation.

This Settlement is the product of full discovery and extensive litigation over the course of three years. In response to the complaint filed July 11, 2018, Defendant Advanced Disposal Services, Inc. immediately moved to strike Plaintiff's class allegations, which was fully briefed. (*Appendix 3* (Declaration of Keith J. Keogh) at ¶7).

---

[1] Plaintiff also alleged Defendants kept calling him after he expressly told them on multiple occasions to stop calling him.

Thereafter, Plaintiff moved to amend the complaint, which was granted over the defense's objection. (*Appendix 3* (Keogh Decl.) at ¶8). Defendants again moved to strike the class allegations, which was again fully briefed, and the Court denied the motion. (*Id.*).

Discovery ensued, with Plaintiff serving five sets of discovery requests during the course of the litigation. (*Id.* at ¶9). Defendants' responses raised a variety issues, necessitating numerous Rule 37 conferences and a motion to compel. (*See id.* at ¶9, ¶12). In the end Defendant produced more than twenty-seven thousand pages of documents, plus data for hundreds of thousands of call records, along with corresponding customer data for the called individuals. (*Id.* at ¶9).

The case also required third-party discovery. This included Plaintiff subpoenaing records and obtaining a declaration from the entity that designed the Five9 calling system used to make the calls at issue, to establish facts concerning the capabilities, operation, and functioning of the system, as well as subpoenaing and obtaining a declaration from the seller of the trash removal service company that led Defendants to call Plaintiff. (*Id.* at ¶10). Plaintiff also responded to full written discovery. (*Id.* at ¶9).

Oral discovery was significant. Plaintiff sat for his deposition, and Class Counsel conducted five depositions of Defendants' witnesses, including its corporate designees. (*Id.* at ¶11). These depositions were critical to gathering evidence needed for class certification, to prove Plaintiff's and the class members' claims, and to overcome Defendants' defenses.

123491

Likewise, Class Counsel worked with Plaintiff's expert to help her prepare her initial and rebuttal reports concerning Defendants' call records and customer data, which was essential to defining and ascertaining the Class, and they also deposed Defendants' counter-expert, who issued multiple reports. (*Appendix 3* (Keogh Decl.) at ¶11).

Motion practice was also significant. In addition to the multiple defense motions to strike class allegations, Plaintiff's motion to compel discovery, and a variety of other procedural motions, the parties fully briefed Plaintiff's motion for class certification (which included a reply), Defendants' motion for summary judgment (which included a sur-reply), and each side's respective *Daubert* motions. (*See id.* at ¶12). The docket for this case has nearly one-hundred-and-sixty entries.

During the pendency of the parties' class certification, summary judgment, and *Daubert* motions, the parties conducted settlement discussions. This included preparing for and participating in a full-day mediation with a well-respected third-party mediator, the Honorable Morton Denlow, who has extensive experience mediating TCPA class actions. (*See id.* at ¶13).

Although the mediation did not result in a settlement, the parties kept negotiating and eventually reached an agreement in principle. (*Id.* at ¶14). The parties then spent the next several months negotiating the terms of the written settlement agreement, the proposed class notices, and the proposed preliminary and final approval orders, which Class Counsel also took the lead in drafting, along with preparing a detailed motion for preliminary approval of the Settlement. (*See id.*).

6

123491

On September 17, 2021, this Court granted the motion for preliminary approval, directing notice of the Settlement to the class. (*Appendix 2* (Dkt. 156) at ¶9).

## II.    THE NOTICE PROVIDED WAS MORE THAN SUFFICIENT

To satisfy Rule 23 and Due Process, the notice of the Settlement need only be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) (due process requires the notice be "the best practicable, 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'") (citation omitted).[2]

The notice plan approved by the Court and executed by the Claims Administrator easily meets this standard. Defendants had name and contact information for the vast majority of class members, and thus the Settlement provided for direct notice by regular mail with a follow-up reminder notice. (*Appendix 1* (Settlement Agreement) at §VII(2.A)). Furthermore, the notice described the nature of the action, the class, the claims at issue, the major settlement terms (including the settlement benefits, proposed attorneys' fee award and basis for its calculation, and proposed service award), as well as the class members' right to object to the settlement, opt-out, appear through their own counsel, submit a claim for a share of

---

[2] However, the notice "need not include every material fact or be overly detailed." *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1239 (11th Cir. 2011) (internal quotations and citation omitted). Plus, "due process does not require that class members actually receive notice." *Juris v. Inamed Corp.*, 685 F.3d 1294, 1321 (11th Cir. 2012) (citations omitted).

123491

the settlement proceeds, how to exercise those rights and by when, the binding effect of the class judgment, and how to get additional information free of charge. (*See Appendix 4* (Declaration of Claims Administrator) at ¶3 and at Ex. A (Mail Notice)).

Moreover, to further help class members make an informed decision, the notice directed them to a website set up and run by the Claims Administrator. (*Id.* at Ex. A (Mail Notice), p.2 ("How do I get more information about the settlement?"); *see also Appendix 1* (Settlement Agreement) at §VII(2.B). The site also provided additional details about the Settlement, including a long-form notice containing numerous "FAQs" about the case, additional details about the settlement and the class members' rights to object or opt out, along with a copy of relevant court documents (*e.g.* the settlement agreement, preliminary approval motion, preliminary approval order, and attorneys' fee petition), plus a toll-free number class members could call with additional questions. (*Appendix 4* (Claims Admin. Decl.) at Ex. C (Website Notice)). Finally, the website provided an electronic claim form class members could use to conveniently file their claims online. (*See* Claims Admin. Decl. at ¶7).

The notice program also explicitly advised the class as to the dollar amount and percentage of the fund sought for attorneys' fees, as well as the amount sought for Plaintiff's proposed service award. (*See id.* at Ex. A (Mail Notice), p.2 ("What does the settlement provide?") and at Ex. C (Website Notice) p.3 (§7-§8)). Once again, no class member objected.

123491

This multi-channel notice program was the best notice practicable under the circumstances. Federal Rule 23 expressly provides for notice by "United States mail, electronic means, or other appropriate means." Fed. R. Civ. P. 23(c)(2)(B). Indeed, mail notice combined with a website for further information is commonly approved in class settlements. *See, e.g., Greco v. Ginn Dev. Co.*, 635 Fed. Appx. 628, 634 (11th Cir. Dec. 2, 2015) ("all material facts were available to class members because a full copy of the settlement agreement, and the release, were available on a website referenced in the Notice."); *see also, e.g., Roll v. Enhanced Recovery Co., LLC*, 2021 U.S. Dist. LEXIS 217955 at *17-18 (M.D. Fla. Nov. 10, 2021); *Taylor v. Citizens Telecom Servs. Co.*, 2021 U.S. Dist. LEXIS 230611 at *4-5 (M.D. Fla. Sept. 10, 2021); *Cooper v. Nelnet, Inc.*, 14-cv-00314 (M.D. Fla. Feb. 26, 2015) at ECF 72, ¶10. Accordingly, the notice program approved by the Court satisfied Rule 23 and Due Process.

## III.    THE SETTLEMENT SHOULD BE GRANTED FINAL APPROVAL

A settlement should be approved when it is fair, reasonable and adequate, and not the product of collusion. *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). This determination generally requires consideration of the following factors (the *Bennett* factors):

> (1) likelihood of success at trial; (2) range of possible recovery; (3) point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) complexity, expense and duration of litigation; (5) substance and amount of opposition to the settlement; and (6) stage of proceedings at which the settlement was achieved.

*In re Equifax Customer Data Breach Sec. Breach Litig.*, 999 F.3d 1247, 1273 (11th Cir. 2021) (quoting *Bennett*, 737 F.2d at 986).

123491

In making this determination, the court "should always review the proposed settlement in light of the strong judicial policy that favors settlements." *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 538 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990); *see also In re Equifax*, 999 F.3d at 1273 ("The law favors settlement, particularly in class actions and other complex cases …")). This is because, with a settlement, class members are ensured a benefit as opposed to the "mere possibility of recovery at some indefinite time in the future." *In re Domestic Air Transport.*, 148 F.R.D. 297, 306 (N.D. Ga. 1993); *see also Scott v. Util. Partners of Am., LLC*, 2017 U.S. Dist. LEXIS 17348 at *8 (D. Kan. Feb. 6, 2017) ("the value of immediate recovery would likely outweigh the mere possibility of recovery after protracted litigation.").

Thus, although approval of a class settlement is a matter for the Court's discretion, proper consideration should be given to the consensual decision of the parties. *See Warren v. City of Tampa*, 693 F. Supp. 1051, 1060 (M.D. Fla. 1998) ("affording great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation"), *aff'd*, 893 F.2d 347 (11th Cir. 1989). In other words, "[a] trial judge ought not try the case during a settlement hearing and should be hesitant to substitute his or her own judgment for that of counsel." *In re Smith*, 926 F.2d 1027, 1028 (11th Cir. 1991)

Under the foregoing principles, the instant Settlement easily qualifies as fair, reasonable and adequate, and not the product of collusion.

10

123491

## A. The Settlement Is the Product of Arms-Length Negotiations.

Plainly this Settlement is not collusive. The Settlement only came about after three years of hotly-contested litigation, including two motions to strike Plaintiff's class allegations, extensive written, document, and oral fact discovery, expert discovery, third-party discovery, full briefing of Plaintiff's motion to compel, full briefing of Plaintiff's motion for class certification, full briefing of Defendants' motion for summary judgment, full briefing of the parties' respective *Daubert* motions, and months of negotiations. (*Appendix 3* (Keogh Decl.) at ¶6-¶14). The fact the parties only reached a deal after taking part in a full-day mediation conducted by an experienced, professional mediator confirms the absence of collusion. *See In re Checking Acct. Overdraft Litig.*, 830 F. Supp. 2d 1330, 1349 (S.D. Fla. 2011) (settlement's reasonableness supported by fact it was reached with the assistance of a qualified mediator); *see also Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) ("The fact that the entire mediation was conducted under the auspices of Mr. Hughes, a highly experienced mediator, lends further support to the absence of collusion.").

Finally, there is no clear sailing agreement regarding the proposed attorneys' fee or class representative service awards. In short, the "absence of collusion" factor weighs in favor of approving the Settlement.

123491

B.  **The Results Compared to the Possible Recovery, and Likelihood of
    Success, Favor Approval of the Settlement.**

As noted above, under the Settlement each class member claimant will receive

over $410.00 in cash. (*Appendix 4* (Claims Admin. Decl.) at ¶12). This favorably

compares to the recovery of $500 the TCPA provides per violation (up to treble if the

violation is willful). 47 U.S.C. §227(b)(3)(B), (C). Plus, this result is more remarkable

in light of the fact that almost nineteen percent of the class submitted claims.

This result also favorably compares to other TCPA settlements granted final

approval (including in this District), many of which paid far less relief per class

member and/or provided gift cards instead of cash, or provided no monetary relief at

all (only equitable relief), and had claim rates far lower than the claim rate here.[3]

Moreover, this Court recently approved a TCPA settlement nearly identical to the

instant Settlement. *See Cook*, 16-cv-673-BRD-JRK, Dkt. 210 (M.D. Fla. Jun. 5, 2020)

---

[3] *See, e.g., James v. JPMorgan Chase Bank, N.A.*, 2017 U.S. Dist. LEXIS 91448 at *3
(M.D. Fla. June 5, 2017) (approving settlement providing $81 per class member,
noting that "equals or exceeds the recovery in a typical TCPA class action."); *Wojcik
v. Buffalo Bills, Inc.*, No. 8:12-cv-2414-T-23TBM (M.D. Fla. Aug. 25, 2014) at Dkt.
77, p.5 (class claimants received a $57.50-$75.00 gift card), *approved* at Dkt. 79; *In re
Enhanced Recovery*, 13-md-2398-Orl-37GJK (M.D. Fla. Jul. 29, 2014) at Dkt. 123, p.1
(class only received injunctive relief ), *approved* at Dkt. 125; *Markos v. Wells Fargo
Bank*, 2017 U.S. Dist. LEXIS 17546 at *11 (N.D. Ga. Jan. 30, 2017) (finding $24 per
class member to be "an excellent result"); *Hashw v. Dep't Stores Nat'l Bank*, 182
F.Supp.3d 935, 944 (D. Minn. 2016) (approving a TCPA settlement that provided
$33.20 per claimant); *In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781, 790 (N.D. Ill.
2015) (settlement approved where each claimant would receive $34.60); *Malta v. Fed.
Home Loan Mortg.*, 2013 U.S. Dist. LEXIS 15731 (S.D. Cal. Feb. 5, 2013) (approving
$17.1 million settlement for 5,887,508 class members); *Adams v. AllianceOne
Receivables Mgmt. Inc.*, No. 08-cv-248, Dkt. Nos. 116 & 137 (S.D. Cal. Sept. 28, 2012)
(approving $9 million settlement for 6,079,411 class members); *Palmer v. Sprint Nextel
Corp.*, No. 09-cv-1211, Dkt. Nos. 84 & 91 (W.D. Wash. Oct. 21, 2011) (approving
$5.5 million settlement for approximately 18.1 million class members).

123491

(TCPA settlement paying $3.5 million to over 23,000 class members)).

On top of that, the possibility of a better recovery at trial was anything but certain. Denial of class certification would result in no recovery for the class, and certification was far from guaranteed because of the Court might have agreed with Defendants' attacks on Plaintiff's expert's conclusions about the class (Dkt. 115 (Class Cert. Reply) at 8), and because, as Defendants noted in their class opposition brief, a number of courts in this District recently denied class certification in TCPA cases. *See Morgan v. Adventist Health System/Sunbelt, Inc.*, 2020 U.S. Dist. LEXIS 62299 (M.D. Fla. Jan. 15, 2020); *Sliwa v. Bright House Networks, LLC*, 333 F.R.D. 255 (M.D. Fla. 2019); *Wilson v. Badcock Home Furniture*, 329 F.R.D. 454 (M.D. Fla. 2018).

Plus, even if the class was certified, the Settlement still could exceed the recovery at trial. A jury could award the class zero if it found Defendants had prior express consent to call, despite Plaintiff's arguments to the contrary, given Defendants' claim that they could "buy" the class members' consent by acquiring their accounts from their former trash removal companies, and given the absence of controlling authority on the issue.

Relatedly, the chance of a potentially higher recovery at trial must be discounted by the possibility Plaintiff might lose on Defendants' *Daubert* and summary judgment motions, or any appeal of a favorable class or merits decision. Defendants are represented by seasoned class action defense counsel, the outcome of each of these stages is never guaranteed and, even if Plaintiff cleared every hurdle,

13

the class still might recover less than the Settlement because, for example, some courts view awards of aggregate statutory damages with skepticism and consider reducing such awards on due process grounds. *See Aliano v. Joe Caputo & Sons - Algonquin, Inc.,* 2011 U.S. Dist. LEXIS 48323 at *13 (N.D. Ill. May 5, 2011) ("the Court cannot fathom how the minimum statutory damages award ... would not violate Defendant's due process rights."); *but see Phillips Randolph Enters., LLC v. Rice Fields*, 2007 U.S. Dist. LEXIS 3027 at *7-8 (N.D. Ill. Jan. 11, 2007) ("Contrary to [defendants'] implicit position, the Due Process clause of the 5th Amendment does not impose upon Congress an obligation to make illegal behavior affordable, particularly for multiple violations.").

Against these uncertainties, the Settlement guarantees the class substantial cash relief. *See In re Equifax*, 999 F.3d at 1257 ("Absent the settlement, the class action could have faced serious hurdles to recovery, and now the class is entitled to significant settlement benefits that may not have even been achieved at trial."); *Gevaerts v. TD Bank, N.A.*, 2015 U.S. Dist. LEXIS 150354 at *38 (S.D. Fla. Nov. 5, 2015) ("Rather than facing more years of costly and uncertain litigation, [the] Settlement Class Members will receive an immediate cash benefit...") (brackets added). Thus, the results and risks favor approval.

C. The Stage of the Proceedings, and the Complexity, Length, and Expense of Further Litigation, Favor Approval.

The Settlement is also fair, reasonable, and adequate because it is the product of full knowledge of the material facts by highly competent counsel with extensive

14

123491

experience litigating TCPA class actions. *See Ulbrich v. GMAC Mortg., LLC*, 2013 U.S.
Dist. LEXIS 188087 at *4 (S.D. Fla. May 10, 2013) (settlement merited approval in
part because it was negotiated "by highly capable and experienced counsel, with full
knowledge of the facts, law, and risks inherent in litigating the Action …"); *see also
Poertner v. Gillette Co.*, 2014 U.S. Dist. LEXIS 116616 at *13, n.8 (M.D. Fla. Aug. 21,
2014) (expressly noting counsel's class action experience), *aff'd* 618 Fed. Appx. 624
(11th Cir. July 16, 2015); *see also Appendix 3* (Keogh Decl.) at ¶4-¶5, and ¶16-¶23
(detailing Class Counsel's extensive class action and TCPA experience).

As noted, Class Counsel defeated Defendants' motion to strike the class
allegations, obtained and reviewed more than twenty-seven thousand pages of
documents, plus hundreds of thousands of call records and corresponding customer
data, conducted third party discovery and expert discovery, took more than five
depositions (including an expert deposition), and briefed *Daubert* issues, class
certification, and summary judgment, before reaching this Settlement. Thus, counsel
had ample information to evaluate merits of the class members' claims, the nature
and strength of Defendants' defenses, and the chances of success and potential
recovery. (*See Appendix 3* (Keogh Decl.) at ¶17).

Moreover, without the Settlement, Plaintiff, the Class and the courts still faced
a considerable amount of time-consuming, complex, and expensive litigation. This
includes deciding Plaintiff's pending class certification motion, deciding Defendants'
pending summary judgment motion, presiding over a trial, and briefing and deciding
appeals of the class certification and merits decisions. These circumstances also favor

15

123491

approval. *See In re Equifax*, 999 F.3d at 1273 ("The law favors settlement … where substantial resources can be conserved by avoiding lengthy trials and appeals.").

### D. The Lack of Opposition to the Settlement and Opinions of Competent Counsel Favor Approval.

As noted above, this all-cash Settlement provides a substantial recovery and, given the difficulties and risk of failing to clear all hurdles necessary to achieve a successful outcome through litigation (which might not exceed this Settlement even if the class were to win), it is Class Counsel's opinion this settlement is plainly in the class's best interests. (*See Appendix 3* (Keogh Decl.) at ¶18; *Appendix 5* (Declaration of Max Story) at ¶14; *Appendix 6* (Declaration of Christopher Martineau) at ¶7-¶8).

The class's overwhelmingly positive reaction to the Settlement confirms this evaluation. Again, nearly nineteen percent of the class filed claims (far greater than the single-digit percentage of claims achieved in other class settlements granted final approval),[4] no class member opted out, and no class member objected to the Settlement. The absence of objections or even a "low percentage of objections points to the reasonableness of a proposed settlement and supports its approval." *Lipuma*,

---

[4] *See Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1306 (9th Cir. 1990) ("Settlements of large class actions have been approved even where less than five percent of the class files claims.") (citing 2 Newberg on Class Actions at Appendix 8-2, §§ 8.44-45); and, *e.g., North Sub. Chiropractic Clinic v. Zydus Pharma. (USA) Inc.,* 13-cv-3105 (N.D. Ill. Feb. 3, 2016) at Dkt. 80, p.3 and Dkt. 86, p.7 (TCPA settlement approved with 4,184 claims from 88,747 class members, a 4.7% claim rate); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493 (N.D. Ill. 2015) (TCPA settlement approved with 230,000 valid claims from 9.2 million class members, a 2.5% claim rate); *Wood Dale Chiropractic, Ltd. v. DrFirst.com, Inc.*, 12-cv-780 (N.D. Ill Nov. 6, 2013) at Dkt. 73, ¶10 and Dkt. 69, p.1 (TCPA settlement approved with 4,696 claims from 238,368 potential class members, a 1.97% claim rate).

123491

406 F.Supp.2d at 1324. Given the foregoing, there should be no doubt the Settlement qualifies as fair, reasonable, and adequate, and merits final approval.

## IV.    THE UNTIMELY CLAIMS SHOULD BE HONORED

Of the more than fifty-two hundred class members who submitted claims, seventy-three were received shortly after claim due date and thus were untimely. (*See Appendix 4* (Claims Admin. Decl.) at ¶9). Plaintiff requests the Court nevertheless approve these claims for payment because the Claims Administrator reports the claims were otherwise valid in all respects (*id.*), and their untimeliness is not material to the other class members' recoveries as it would only reduce the payouts of the timely claims by less than six dollars. (*Id.* at ¶12). Accordingly, there is no material reason to exclude these class members from receiving the benefits of the Settlement. Their claims should be honored.

## V.    THERE IS NO OBJECTION TO THE PROPOSED ATTORNEY FEE, EXPENSE, OR CLASS REPRESENTATIVE SERVICE AWARDS

Contemporaneous with the issuance of notice to the Class, Plaintiffs moved for an award of attorneys' fees equal to one-third of the Settlement Fund ($1,166,666.00), reimbursement of out-of-pocket expenses in the amount of $63,734.01, and a class representative service award in the amount of $10,000. (See Dkt. 157 (Plaintiff's Motion for Award of Attorneys' Fees and Expenses, and Class Representative Service Award ("Fee Motion")) at p.2).

The notice to the class expressly informed class members of these proposed awards: "Plaintiff will petition for a service award not to exceed $10,000 for

123491

Plaintiff's work in representing the Class and Class Counsel's fees up to one-third of the Settlement Fund, not to exceed $1,166,666, plus reasonable expenses." *Appendix 4* (Claims Admin. Decl.) at Ex. A, p.2 ("What does the settlement provide?"); *see also id.* at Ex. C, §7-§8). Plus, a copy of the Fee Motion was posted on the Settlement website for class members to review throughout the notice period. (*See id.* at ¶7).

No class member objected to the proposed attorneys' fee, expense, or service awards. As demonstrated in the Fee Motion, the proposed fee and expense awards are well supported by law and fact because:

(1) When an attorney's efforts result in the creation of a common fund for the benefit of a class, the law entitles the attorney to a share of the fund as their fee, and the Eleventh Circuit requires the fee award be determined as a percentage of the fund. *In re Equifax*, 999 F.3d at 1278 (citing *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991)); and *Camden I*, 946 F.2d at 774 ("Attorneys in a class action in which a common fund is created are entitled to compensation for their services from the common fund …")). This is fair and equitable because, "[u]nless absentees contribute to the payment of attorney's fees incurred on their behalves, they will pay nothing for the creation of the fund and their representatives may bear additional costs." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 480 (1980).

(2) The Eleventh Circuit allows percentage fee awards as high as 50% of the fund. *Camden I*, 946 F.2d at 774-75 ("an upper limit of 50% of the fund may be stated as a general rule, although even larger percentages have been awarded.").

(3) In addition to being well under *Camden I*'s 50% threshold, the reasonableness of the proposed one-third percentage award here is demonstrated by fact it is equal the percentage fee awards in other class action cases granted approval in this Circuit,[5] it is equal to or less than the percentage fee awards granted approval in in TCPA class cases in particular,[6] and it is the same award this Court recently approved for Class Counsel in a nearly identical settlement in a TCPA case. *See Cook*, 16-cv-673-BRD-JRK, Dkt. 210 at ¶16(h) (M.D. Fla. Jun. 5, 2020) (Davis, J.) (awarding Class Counsel one-third of $3.5 million TCPA settlement, plus expenses).

(4) The proposed fee award's reasonableness is also confirmed by the results achieved, the difficulties faced, the skill and effort needed, the abilities of counsel, and awards in similar cases. *See Muransky*, 922 F.3d at 1195 (citing *Camden I*, 946

---

[5] *Muransky v. Godiva Chocolatier, Inc.*, 922 F.3d 1175, 1195 (11th Cir. 2019) (overruling objections to 33% fee award ($2.1 million) from a $6.3 million settlement) (vacated on other grounds); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295-96 (11th Cir. 1999) (affirming a 33% fee award ($13.33 million) from a $40 million settlement); *Seghroughni v. Advantus Rest., Inc.*, 2015 U.S. Dist. LEXIS 64602 at *2 (M.D. Fla. May 13, 2015) ("An attorney's fee ... which is one-third of the settlement fund ... is fair and reasonable..."); *Cabot E. Broward 2 LLC v. Cabot*, 2018 U.S. Dist. LEXIS 192706 at *20 (S.D. Fla. Nov. 9, 2018) (citing "19 cases from this Circuit in which attorneys' fees amounting to 33% or more of a settlement fund were awarded," including settlements of $310 million, $77.5 million, $75 million, $40 million, and $25 million); *see also Wolff v. Cash 4 Titles*, 2012 U.S. Dist. LEXIS 153786 at *13 (S.D. Fla. Sept. 26, 2012) ("One-third of the recovery is considered standard in a contingency fee agreement.").

[6] *See Kolinek*, 311 F.R.D. at 502-503 (granting 36% fee award in TCPA case); *In re Capital One*, 80 F. Supp. 3d at 807 (granting 36% fee award from first $10 million of the settlement in a TCPA case); *Martin v. Dun & Bradstreet, Inc.*, No. 12-215 (N.D. Ill. Jan. 16, 2014) at Dkt. 63, ¶17 (granting 36.3% fee and expense award in TCPA case); *Hanley v. Fifth Third Bank*, No. 12-1612 (N.D. Ill. Dec. 23, 2013) at Dkt. 79, p.10, and Dkt. 87, ¶14 (granting one-third percentage fee award in TCPA case); *Martin v. JTH Tax, Inc.*, No. 13-6923 (N.D. Ill. Sept. 23, 2015) at Dkt. 86 (same).

123491

F.2d at 775) (time, labor, and skill required, novelty and difficulty of issues, results

obtained, whether the fee is contingent, customary fee and awards in similar cases,

and the experience and ability of the attorneys, are factors to consider in determining

fee award)). Specifically, Counsel achieved a multi-million dollar settlement that will

pay thousands of class members more than $410.00 each, well-exceeding many other

TCPA settlements granted approval on a per-class member basis (including

settlements approved in this District).[7]

Likewise, the case required substantial effort and skill, and Class Counsel

faced considerable difficulties. As noted, the case required three years of litigation

against sophisticated class action defense counsel, including extensive written, oral,

third-party, and expert discovery, analyzing more than twenty-seven thousand pages

of documents and hundreds of thousands of call records and corresponding customer

data, extensive motion practice (including Plaintiff's discovery, *Daubert*, and class

motions, and Defendants' motions to strike class allegations, *Daubert* motion, and

---

[7] *See, e.g., James*, 2017 U.S. Dist. LEXIS 91448 at *3 (approving settlement providing
$81 per class member, noting that "equals or exceeds the recovery in a typical TCPA
class action."); *Wojcik*, No. 8:12-cv-2414-T-23TBM at Dkt. 77, p.5 (class claimants
received a $57.50-$75.00 gift card), *approved* at Dkt. 79; *In re Enhanced Recovery*, 13-
md-2398-Orl-37GJK at Dkt. 123, p.1 (class only received injunctive relief ), *approved*
at Dkt. 125; *Markos*, 2017 U.S. Dist. LEXIS 17546 at *11 (finding $24 per class
member in TCPA case to be "an excellent result"); *Hashw*, 182 F.Supp.3d at 944
(approving a TCPA settlement that provided $33.20 per claimant); *In re Capital One
TCPA Litig.*, 80 F. Supp. 3d at 790 (settlement approved where each claimant would
receive $34.60); *Malta*, 2013 U.S. Dist. LEXIS 15731 (approving $17.1 million
settlement for 5,887,508 class members); *Adams*, No. 08-cv-00248, Dkt. Nos. 116 &
137 (approving $9 million settlement for 6,079,411 class members); *Palmer*, No. 09-
cv-01211, Dkt. Nos. 84 & 91 (approving $5.5 million settlement for approximately
18.1 million class members).

123491

summary judgment motion), months of settlement negotiations, a formal mediation with a well-respected third-party neutral, and preparation of all motions and documents necessary to effect the Settlement. Likewise, Class Counsel faced the fact a number courts in this District had recently denied class certification in TCPA cases, Defendant's expert's attacks on Plaintiff's expert, the potential the Court might grant Defendant's pending *Daubert* and summary judgment motions, the potential for a due process challenge to any significant statutory damage award under *Aliano*, *supra*, and the need to win at trial and prevail on any appeal of the class or merits rulings to secure any recovery. In other words, although Class Counsel achieved exceptional results here, that outcome was anything but guaranteed.

(5) Relatedly, the proposed fee award's reasonableness is confirmed by the fact that Class Counsel's ability to recover any fees for their work or the more than sixty-thousand dollars in out-of-pocket expenses they put into the case was purely contingent on a successful outcome. This is important because:

> A determination of a fair fee for Class Counsel must include consideration of the contingent nature of the fee, the wholly contingent outlay of out-of-pocket sums by Class Counsel, and the fact that the risks of failure and nonpayment in a class action are extremely high.

*Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1339 (S.D. Fla. 2007) (citations omitted). Indeed, "[a] contingency fee arrangement often justifies an increase in the award of attorney's fees." *In re Checking Acc't Overdraft Litig.*, 830 F.Supp.2d at 1364. Plus, the risk was enhanced here because the TCPA does not contain a fee-shifting provision or other mechanism to allow counsel to recover their

123491

fees, and because Class Counsel were up against two well-heeled defendants with
sophisticated class action defense counsel. Accordingly, "[c]ases recognize that
attorneys' risk is 'perhaps the foremost factor' in determining an appropriate fee
award." *Pinto,* 513 F.Supp.2d at 1339 (collecting cases).[8]

Simply put, "[f]ew lawyers will take a case that consumes significant attorney
time, involves uncertain questions, and requires them to potentially advance
substantial amounts of attorney time and out-of-pocket expenses and risk getting
nothing; especially given … the inherent possibility of failing to certify the class, the
risk of losing on summary judgment or at trial, [and] the risk of losing any victory on
appeal." *Flaum v. Doctor's Assocs.*, 2019 U.S. Dist. LEXIS 40626 at *15 (S.D. Fla.

---

[8] Class actions are inherently risky. Although Class Counsel have brought many
successful class actions, in others they only recovered nominal amounts, including
TCPA cases. *See, e.g., Morgan, Wilson,* and *Sliwa, supra,* as well as *Flaum v. Buth-Na-
Bodhaige, Inc.*, 15-civ-62695-WJZ, Dkt. 67 (S.D. Fla.) (although Class Counsel filed
their case first, the class claims were settled by a later-filed, competing class action
that only recovered gift cards, and Plaintiff's counsel received nothing); *Kirchein v. Pet
Supermarket, Inc.*, 297 F.Supp.3d 1354, 1355-56 (S.D. Fla. 2018) (defendant
successfully moved to dismiss case for lack of standing *after* agreeing to settlement and
after settlement had been granted preliminary approval). Likewise, in another case,
the class was decertified two years after certification, and after notice had been sent
to the Class, which resulted in Class Counsel incurring hundreds of thousands of
dollars in notice costs, plus the additional cost to send notice of the decertification.
*See Johnson v Yahoo!, Inc.*, 2018 U.S. Dist. LEXIS 23564 (N.D. Ill. Feb. 13, 2018)
(order decertifying class after notice). Similarly, in *Braver v Northstar Alarm Serv.*, 17-
cv-00383-F (W.D. Okla.), a co-defendant filed for bankruptcy after class certification,
notice to class, and judgment, and in *Kinnamon v. Ditech Financial, LLC.*, 16-646 JAR,
Dkt. 218 (E.D. Mo. Dec. 2, 2019), the case was dismissed due to bankruptcy after
class certification and summary judgment were fully briefed.

123491

Mar. 11, 2019). Thus, in addition to the fact there is no objection from the class, the proposed fee and expense[9] awards are well earned. They should be approved.

Finally, the proposed $10,000 class representative service award is reasonable to reward Plaintiff for the substantial cash benefit his bringing of this case and efforts assisting Class Counsel helped confer on the class, and because courts routinely approve service awards equal to or exceeding $10,000. *See Muransky*, 922 F.3d at 1196 (affirming $10,000 service award, noting "Many circuits have endorsed incentive awards and recognize them as serving the purposes of Rule 23.") (vacated on other grounds); *Cook*, 16-cv-673-BRD-JRK, Dkt. 210 at ¶17 (M.D. Fla. Jun. 5, 2020) (Davis, J.) (granting $20,000 service award in TCPA case).[10]

---

[9] As explained in the fee motion, the expenses were reasonably incurred because they largely consist of charges for experts, depositions, and the mediation, none are for overhead items like photocopying, research, telephone, meals, and all were reasonably necessary to prosecute the case. *See* Dkt. 157 (Fee Motion) at pp. 21-22. and, *e.g.*, *Cook*, 16-cv-673-BRD-JRK, Dkt. 210 at ¶16(h) (M.D. Fla. Jun. 5, 2020) (granting Class Counsel a one-third percentage fee award plus $57,903.83 in expenses in a TCPA class case).

[10] *See also*, *e.g.*, *Cooper v. NelNet, Inc.*, 14-cv-314-Orl-37DAB, Dkt. 85 at p.5, ¶11 (M.D. Fla. Aug. 4, 2015) (approving a $25,000 service award in TCPA case); *Cabot E. Broward 2 LLC*, 2018 U.S. Dist. LEXIS 192706 at *28-29 (S.D. Fla. Nov. 9, 2018) (approving $50,000 per plaintiff, noting "[t]ogether, the requested awards total $100,000, or 0.1% the amount recovered for the Class, which is well within the range of incentive awards in other cases.") (collecting cases approving service awards ranging from $15,000 to $1.76 million); *Allen v. JPMorgan Chase Bank, NA*, No. 13-8285, Dkt. 93 at p.6, ¶18 (N.D. Ill. Oct. 21, 2015) (approving $25,000 service award in TCPA case); *Desai v. ADT Sec. Servs., Inc.*, No. 11-1925, Dkt. 243 at ¶20 (N.D. Ill. Jun. 21, 2013) (granting $30,000 service awards in TCPA class settlement); *see also Gevaerts*, 2015 U.S. Dist. LEXIS 150354 at *26 ($10,000 incentive awards to multiple plaintiffs) (*citing Spicer v. Chi. Bd. of Options Exchange, Inc.*, 844 F. Supp. 1226, 1267-68 (N.D. Ill. 1993) (collecting cases approving incentive awards ranging from $5,000 to $100,000, and approving $10,000 for each plaintiff).

123491

The class raised no objection to the proposed service award. Thus, as other
courts in this District have done, the proposed award should be approved contingent
on whether the Eleventh Circuit decides to reconsider or rehear the panel opinion
against such awards in *Johnson v. NPAS Sols., LLC*, 975 F.3d 1244 (11th Cir. 2020),
mandate withheld, No. 18-12344, (Nov. 9, 2020). *See Mosley v. Lozano Ins. Adjusters*,
2021 U.S. Dist. LEXIS 15971 at *13 (M.D. Fla. Jan. 11, 2021) (recommending
deferring ruling on the service award pending *NPAS*), *R&R adopted*, 2021 U.S. Dist.
LEXIS 15726 at *2 (M.D. Fla. Jan. 28, 2021); and *Mercer v FDS Bank,* 2021 U.S.
Dist. LEXIS 136244 at *5 (M.D. Fla. July 20, 2021) ("recommend[ing] the Court
approve the contingent incentive award."), *R&R adopted* 2021 U.S. Dist. LEXIS
184929 at *5 (M.D. Fla. Aug. 31, 2021). Thus Plaintiff would request he be granted
the service award contingent upon *Johnson* being reversed and, if it is not reversed,
the amount awarded would be added to the Settlement Fund for the class as
provided in the settlement agreement.

## VI.    DEFENDANTS DO NOT OBJECT TO THE RELIEF SOUGHT

Defendants have agreed to the terms of the Settlement, and do not oppose this
motion.

## CONCLUSION

For the above reasons, Plaintiff respectfully requests the Court (1) grant the
Settlement final approval; (2) grant Class Counsel's request for an award of
attorneys' fees equal to one-third of the Settlement Fund ($1,166.666.00), plus
$63,734.01 in out-of-pocket expenses they incurred litigating the case for the class; (3)

123491

conditionally grant Plaintiff a class representative service award in the amount of $10,000 pending the Eleventh Circuit's final resolution of *Johnson v. NPAS Sols., LLC*, 975 F.3d 1244 (11th Cir. 2020); and (4) grant any additional relief deemed just.

For the Court's convenience, Plaintiff hereby submits a proposed Final Approval Order attached as *Appendix 7*.

## Local Rule 3.01(g) Certification

Plaintiff certifies he conferred with Defendants and the motion is unopposed.

Respectfully Submitted,

*s/Keith J. Keogh*
Keith J. Keogh (FBN: 0126335)
Michael S. Hilicki (*pro hac vice*)
Keogh Law, Ltd.
55 W. Monroe St., Ste. 3390
Chicago, IL 60603
312.726.1092 (Main)
Keith@KeoghLaw.com
MHilicki@KeoghLaw.com

Christopher P. Martineau, Esq. (*pro hac vice*)
JOHNSTON | MARTINEAU, P.L.L.P.
2233 Hamline Avenue North, Suite 102
Roseville, MN 55113
Telephone:  (612) 767-7790
cmartineau@jmlegal.com

Max Story
MAX STORY LAW
328 2nd Avenue N., Ste. 100
Jacksonville Beach, FL 32250
max@storylawgroup.com

Class Counsel